IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
BENTON DIVISION

| | |
|---|---|
| DAVID BRESHEARS II, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No.: 3:11-cv-00799-MJR-SCW |
| ) | |
| R.T. MIDWEST HOLDINGS, LLC, ) | |
| D/B/A RUBY TUESDAY, ) | |
| ) | |
| Defendant, ) | **JURY TRIAL DEMANDED** |
| ) | |
| Serve: Ronald Dipersio ) | |
| 140 Depot Street ) | |
| Antioch, IL 60002 ) | |

## **COMPLAINT**

Plaintiff, David Breshears II, by his undersigned attorney, makes the following Complaint against defendant, R.T. Midwest Holdings, LLC, d/b/a Ruby Tuesday (hereafter "Ruby Tuesday").

1. At all relevant times, Mr. Breshears has been an individual with the condition of dwarfism.

2. Mr. Breshears has the condition of achondroplastic dwarfism which is characterized by shortened arms and legs, long trunk, and short stature.

3. Mr. Breshears is approximately four feet, eight inches tall.

4. At all relevant times, Mr. Breshears has also had a spine condition which limits his ability to lift and carry objects beyond a certain weight.

5. At all relevant times, Mr. Breshears' conditions related to his dwarfism and spine limited his physical abilities which included limitations with respect to reaching, lifting, and carrying.

6. The physical conditions and limitations as stated above at all relevant times substantially limited one or more of Mr. Breshears' major life activities, including limitations related to reaching, lifting and carrying.

7. In approximately late July or early August of 2010, Ruby Tuesday interviewed Mr. Breshears for the position of server at a Ruby Tuesday restaurant located in Effingham, Illinois.

8. Mr. Breshears informed manager Bonnie and General Manager Mary Lynn at the interview and during his server training that he would need the assistance of a small stool to reach beverage glasses located at the server station.

9. The use of a small stool allowed Mr. Breshears to reach the beverage glasses at the server station so that he could prepare beverages.

10. Mr. Breshears informed manager Bonnie and General Manager Mary Lynn at the interview and during his server training that because of his spine condition he could not lift or carry more than approximately ten or fifteen pounds.

11. At all relevant times, and during the time that Mr. Breshears worked and trained at the Ruby Tuesday restaurant, Mr. Breshears was able to perform the essential functions of the job of server at the Ruby Tuesday restaurant with or without reasonable accommodation.

12. Mr. Breshears was hired as a server by Ruby Tuesday at the compensation of approximately $4.90 per hour and a percentage of tips received from customers.

13. Rather than allowing Mr. Breshears to use a stool located in the restaurant or working with Mr. Breshears to find a solution to his inability to reach the beverage glasses, General Manager Mary Lynn informed Mr. Breshears that she would not allow an existing stool

which was located in the restaurant to be in the server station area because it was tacky and scolded Mr. Breshears when he attempted to use that stool in the server station area to reach beverage glasses.

14. General Manager Mary Lynn also informed Mr. Breshears that he needed to purchase his own stool with his own money without reimbursement from Ruby Tuesday in order to keep his employment with Ruby Tuesday.

15. As a result of General Manager Mary Lynn not allowing Mr. Breshears to use the aforementioned existing stool located in the restaurant, Mr. Breshears was forced to stand on a cabinet to reach the beverage glasses or request help with preparing beverages from other servers.

16. During a particular work shift in August 2010, manager Mary Lynn informed Mr. Breshears that unless he left his shift to purchase his own stool with his own money immediately, his position at the Ruby Tuesday restaurant would be terminated.

17. Mr. Breshears then left the Ruby Tuesday restaurant during his shift and purchased a stool with his own money at a nearby Wal-Mart store and brought it back to the Ruby Tuesday restaurant.

18. Despite the purchase of a new stool, General Manager Mary Lynn did not allow Mr. Breshears to keep the stool ready for use at the server station; she required him to either put it in the kitchen area after each time he used it or fold it up and put it under the server station after each time he used it.

19. Placing the stool under the server station required Mr. Breshears to get on his hands and knees to retrieve it each time he needed it to prepare beverages and to then wash his hands in the back of the restaurant out of the presence of customers before retrieving glasses to

make beverages. General Manager Mary Lynn also required Mr. Breshears to wash his hand in the kitchen area after each time he touched the stool if he was returning to the dining area.

20. If Mr. Breshears did not put the stool in back in the kitchen area or place it under the server station after each use due to time constraints involved with serving tables of customers, General Manager Mary Lynn would often put it back in the kitchen area or place it under the server station herself.

21. The process of having to place the stool back in the kitchen area or under the server station after each use and retrieve the stool from the kitchen area or get on his hands and knees to retrieve it from under the server station each time he needed to serve beverages and then wash his hands before preparing beverages was extremely difficult for Mr. Breshears due to the time constraints of serving tables of customers.

22. Mr. Breshears informed General Manager Mary Lynn about the difficulty of keeping up with his duties because of her requirement that he put the stool in the kitchen or under the server station after each time he used it and asked General Manager Mary Lynn if he could keep it out at the server station.

23. In response to Mr. Breshears' request to keep the stool out at the server station, General Manager Mary Lynn told Mr. Breshears that she did not care about his difficulties and that he either put it away after each time he used it or he would no longer be able to be employed at Ruby Tuesday.

24. Subsequent to purchasing the stool at Wal-Mart, Mr. Breshears asked General Manager Mary Lynn if Ruby Tuesday would reimburse him for the cost of the stool.

25. In response to Mr. Breshears' request for reimbursement for the cost of the stool, General Manager Mary Lynn informed him that he would receive no reimbursement.

26. General Manager Mary Lynn informed Mr. Breshears that he would be required to fill the ice compartment at the server station from ice located in the back of the restaurant.

27. The duty of filling the ice compartment was assigned to the various employees on certain days via a schedule prepared by General Manager Mary Lynn and posted for the employees to view.

28. The ice duty consisted of filling large containers with ice which were heavier than ten to fifteen pounds at the back of the restaurant and carrying the large containers to the ice compartment at the server station.

29. Mr. Breshears informed General Manager Mary Lynn that he would not be able to carry the large containers due to the condition of his spine.

30. Mr. Breshears suggested to General Manager Mary Lynn the possibility that he use smaller containers to carry the ice to the ice compartment at the server station.

31. In response to Mr. Breshears' concern about carrying the large containers of ice and suggestion of using smaller containers, General Manager Mary Lynn informed Mr. Breshears that he would be required to performed the duty of filling the ice compartment at the server station when assigned and he could not use any containers other than the large containers that were regularly used for the duty.

32. On the occasions when Mr. Breshears was assigned the duty of filling the ice compartment at the server station, manager Bonnie would enlist the assistance of another employee to perform the ice duty so that Mr. Breshears would not have to perform the duty.

33. On a particular shift on or about August 22, 2010, Mr. Breshears was assigned the duty of filling the ice compartment at the server station when both General Manager Mary Lynn and Manager Bonnie were absent from the restaurant.

34. On that particular shift referred to in the paragraph immediately above, manager Connie from a Ruby Tuesday restaurant in Champaign, Illinois was the manager on duty at the Effingham Ruby Tuesday restaurant.

35. Mr. Breshears informed manager Connie about the fact that he could not carry the large containers of ice.

36. In response to the information given to her by Mr. Breshears with respect to carrying the containers of ice, manager Connie informed Mr. Breshears that there was nothing that she could do and he was required to perform the duty of filling the ice compartment at the server station.

37. Subsequent to being informed by Connie that there was nothing that she could do and he was required to perform the duty of filling the ice compartment at the server station, Mr. Breshears performed the duty with the large containers of ice and suffered pain and discomfort in his back.

38. Mr. Breshears subsequently went to the emergency room at St. Anthony's Hospital on August 22, 2010 and August 23, 2010 and was prescribed pain medication.

39. Subsequent to his visits in the emergency room, Mr. Breshears spoke to General Manager Mary Lynn on the telephone and requested time off to become accustomed to the prescribed pain medication.

40. In response to Mr. Breshears' request for time off to become accustomed to the pain medication General Manager Mary Lynn terminated Mr. Breshears' employment with Ruby Tuesday during that same telephone conversation referred to in the paragraph immediately above.

41.     The conduct above demonstrates that Ruby Tuesday failed to engage in good faith in an interactive process to find reasonable accommodations for Mr. Breshears but instead sternly and rigidly denied requests for accommodations, insisted upon unreasonable procedures, and made little if any effort to provide reasonable accommodations, and discriminatorily terminated Mr. Breshears' employment.

## PARTIES

42.     Plaintiff, David Breshears II, is a twenty-nine year old man who at all relevant times met the definition of "employee" and a "qualified individual with a disability" under the Americans with Disabilities Act ("ADA"), 42 U.S.C. section 12101 et seq.

43.     Defendant, R.T. Midwest Holdings, LLC d/b/a Ruby Tuesday, is an entity organized under the laws of the State of Illinois with its principal office located in Maryville, Tennessee.

44.     At all relevant times, defendant, R.T. Midwest Holdings, LLC d/b/a Ruby Tuesday, was a "covered entity" within the meaning of the ADA, 42 U.S.C. section 12101 et seq. At all relevant times defendant, R.T. Midwest Holdings, LLC d/b/a Ruby Tuesday, was an "employer" within the meaning of the ADA, 42 U.S.C. 12101 et seq., and engaged in industry affecting commerce and at all relevant time employed more than fifteen persons.

## JURISDICTION AND VENUE

45.     This Court has subject matter jurisdiction of Count I of this Complaint pursuant to Title I of the Americans with Disabilities Act ("ADA"), codified at 42 U.S.C. section 12101 et seq., and pursuant to 28 U.S.C. section 1331 and 28 U.S.C. section 1343.

46.     This Court has supplemental jurisdiction with respect to Count II of this Complaint pursuant to 42 U.S.C. section 1367.

47. Venue is proper within this district and division pursuant to 28 U.S.C. section 1391 because the unlawful employment practices complained of herein occurred within Effingham County, Illinois, which is within this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

48. Mr. Breshears timely filed a charge of discrimination with the Illinois Department of Human Rights which was cross-filed with the EEOC.

49. On June 7, 2011 the EEOC mailed to Mr. Breshears a Notice of Right to Sue, which is attached hereto and incorporated herein as Exhibit A.

## COUNT I

## DISCRIMINATION IN VIOLATION OF THE ADA, 42 U.S.C. Section 12101 et seq.

50. Mr. Breshears realleges the allegations contained in paragraphs 1 through 49.

51. Ruby Tuesday violated the ADA by refusing to make reasonable accommodations for Mr. Breshears' known disabilities, refusing to participate in good faith in an interactive process to provide accomodations, and terminating his employment on account of his disability.

52. As a result of Ruby Tuesday's violations of the ADA Mr. Breshears lost his job, lost wages, and suffered emotional distress and other damages.

## COUNT II

## ILLINOIS COMMON LAW CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

53. Plaintiff realleges the allegations contained in paragraphs 1 through 46.

54. General Manager Mary Lynn on several occasions scolded Mr. Breshears in front of other employees and restaurant customers for having a stool in the server station area.

55. On more than one occasion, General Manager Mary Lynn tapped Mr. Breshears on the shoulder while he was at a table seated with customers and ordered him to remove the stool from the server station area.

56. On one occasion, General Manager Mary Lynn stated to Mr. Breshears that he "really sucked" at his job and she did not know why "little people" needed jobs because they cannot do anything anyway.

57. General Manager Mary Lynn was enabled in inflicting her emotional distress upon Mr. Breshears by using her position of authority over him and threatening to carry out the discipline of termination.

58. General Manager Mary Lynn's conduct as outlined above was on at least some occasions in retaliation for Mr. Breshears requesting the accommodation of leaving the stool out at the servers' station and requesting reimbursement of the cost of the stool.

59. General Manager Mary Lynn's refusal to provide simple accommodations, making Mr. Breshears go to the back of the restaurant to retrieve and put away his stool each time he needed it or make it so that he needed to get on his hands and knees to retrieve it, refusing to make an accommodation relating to the ice duty, threatening termination, terminating him, and very hurtful comments relating to Mr. Breshears' condition of dwarfism constituted extreme and outrageous conduct and caused Mr. Breshears to be humiliated, embarrassed, fearful, and suffer extreme emotional distress.

## DEMAND FOR JURY TRIAL

60. Plaintiff demands trial by jury pursuant to F.R.C.P. 38 on all issues so triable by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Breshears prays that this Court will grant to him the following relief:

a. Enter judgment in Mr. Breshears' favor on all counts.

b. Award all relief available under federal and state law including but not limited to back pay, front pay, compensatory damages, nominal damages, damages for emotional distress, and other monetary losses suffered by Mr. Breshears as a result of Ruby Tuesday's violations of the federal and state laws as alleged above.

c. Award Mr. Breshears punitive damages.

d. Award attorney's fees and costs.

e. Award Mr. Breshears prejudgment interest.

f. Award any other relief that this Court deems just and appropriate.

        s/Brad G. Pelc
        Brad G. Pelc, #06230022
        PELC LAW OFFICE
        416 S. High St.
        P.O. Box 7970
        Belleville, IL 62222-7970
        Phone: (618) 234-6199, (800) 401-2397
        Fax: (888) 594-4206
        Email: bradg@pelclaw.com
        ATTORNEY FOR PLAINTIFF